The defendant in the indictment is charged with doing certain things from 1997 to all the way through 2002, not just in 2002. The indictment says that he entered into an agreement with UTIG and TAHAJE to do these various things, and it sets out various overt acts. It doesn't say he did the overt acts, but it says that from 1997 to 2002 that he did, that he was a part of the conspiracy in doing those overt acts. Let's assume that you're correct, that there is a variance. Going through the record, what prejudice was caused by this? The whole purpose of the indictment is to give him notice, and he's only prejudiced if substantial rights were involved. He was adequately able to prepare a defense. He had his trial. It didn't expose him to evidentiary spillover. I mean, I can't see any prejudice in this case. It was evidentiary spillover, Your Honor, because UTIG was involved in the overt acts from 1997 to 2002. The jury was obviously confused by the fact that there was things going on from 1997 to 2002. That was made manifest when they came in with their question about whether, and I had argued to the jury, that the government had charged an overall conspiracy, and that they hadn't proven the overall conspiracy, although they had tried to because they showed things that had happened in 1998, I believe. And then they came in and they had a question about that. They had the conspiracy ended when there was only one person. Exactly. And, of course, our position is that we should have gotten judgment of acquittal on the overall conspiracy because the government didn't plead discrete conspiracies. The pleading is not even multiplicitous. It alleges only one overall conspiracy, and that was our defense. And the jury. Basically, your Rule 29 would be the same as your Rule 29. That's the same argument. Well, yes, because this is a case. It's the same. I am bringing up that point right now because I believe that the Rule 29. I don't think it's very debatable that that under Rule 29, the overall conspiracy was not proven. I'm simply saying that the variance that occurred was fatal because the government clearly alleged and argued an overall conspiracy. The government was blowing hot and cold. You know, sometimes they say that we say that it only that the that the indictment alleged to it was multiplicitous and it alludes to discrete conspiracies. And then it sometimes agrees that we are only arguing that there was one overall conspiracy and that the government had to prove that. And having failed to prove that, that we should get a judgment of acquittal. But I think we agree now that there's just an overall conspiracy. Assuming that I'm right about that, taking a leap of faith, then under Pinkerton, I believe that if we if this court agrees that a reasonable jury could not have found the defendant, Nanetti guilty beyond a reasonable doubt under the evidence, then under Pinkerton, I submit that we would have to be given at the same time a new trial on the substantive offenses, because we cannot say beyond a reasonable doubt that the that that that the evidence was so overwhelming that it supported the verdict on the substantive offenses because the evidence was that Nanetti only ran errands. He never looked for anything. He never asked for anything for running these errands. He was working for he was just carrying out what his supervisors told him to do. And the only thing he got out of this was a couple of these counterfeit bags. And the evidence was that the special agent told the then and the person who had become the informant, Mrs. Park. Oh, phone, phone, phone to hockey back again, because, you know, he is not getting anything. I don't want him to get something out of it. And so she phones him back. He says, well, don't you want something for Mr. Nanetti, too? And, oh, yeah, OK. I think you like a couple of bags. OK, we'll give him a couple of bags. So he wanted nothing out of it. So the evidence is basically weak enough. So I don't think that this court can say beyond a reasonable doubt. Were there a few free meals, too? Well, the meals kind of went like this. Taji goes to visit and they go to visit her at her restaurant. And he has it. And keep in mind that you take it to Hajji are both Mr. Nanetti's superiors. So come along. So he comes along and they sit there and they're fed and they end up not paying for it. But it wasn't like it was there was any quid pro quo involved or anything of the sort. And so because of that, I'm not asking for a judgment of acquittal on that. But of course, but I'm saying that the jury came in. And they asked their question about whether or not they're there. There could still be an overall conspiracy in effect. And and right after that, after they didn't get the instructions that I think that they needed, they came in and found the defendant guilty on on not just the conspiracy. You were there. Yes. So once you reconstruct the scene for us, the jury comes back. No. And what happened at that point? OK, the jury comes back with this. Did you offer up a supplemental instruction? I didn't offer up a supplemental instruction in so many words. And I did say that the answer to the correct answer. Tell me what you did in so many words. Yes. In the jury asked whether conspiracy is reduced to one number. Does that conspiracy and and another one begin? Well, of course, the situation was I thought I had something cooking here. OK, so I said to the judge, it sounded like the jury was at least considering the possibility that that the conspiracy was down to one person. Right. And so maybe. And so they very well may have been considering this as an overall conspiracy. And maybe they were thinking of acquitting because I had very carefully, although I didn't get a specific instruction on that, I had argued just precisely that as a matter of fact to them. So you had him going. I had him going. Right. And so and so. And so I said to the judge, well, of course, the answer to that is yes. I didn't precisely say to him, just say to them, yes. And of course, I of course, this is in the heat of battle. I've said I'm just trying to understand what. Yes. What did this judge was. And so the judge said, oh, no, because, you know, that's not going to be fair to the government because I'm going to be telling them enough instructions. So if I may interpolate, you know, so they'll really understand what's going on. So they mean that the government just might win the case if I may. All right. And so the judge said, I'm just going to read back the instructions that were I originally gave. And of course, what he's doing is reading back the instructions that created the problem in the first place. They'd already been told that an informant, for example, or when a person is an informant that they cannot be a part of a conspiracy. And I had pointed that out to him in closing argument. And but so. So they went back in. And so I thought, well, maybe something good is going to come of this. I don't know if I'd left the building or I just went back to the office. Exactly. We had to do it over again. What can this. I mean, what would you suggest the district court have done in this issue? It's a very tricky situation because they ask a compound question. You know, one conspiracy ends, another conspiracy begins. It's a very tricky, difficult question. Yes. And it's difficult for the district judge to answer the question without seeming to push him into one direction or another. And I realize, you know, there you are in the middle of trial. The next day, you know, everybody thinks of the things they should have done in court the day before. So let's just look at this. I mean, what should the district judge on the ideal conditions? And if he'd had time to reflect on it, you'd have time to reflect on it. What how should he have answered this difficult, complex question without coming down on one side or the other, without without without seeming to push the jury in one direction? Well, I suppose. And now I have the benefit of a number of cases that have said that he shouldn't have just said, well, yes. You know, send them back again, I suppose. But they asked when the conspiracy is reduced to one. But it's hard to answer that. Yes. Without also seeming suggestive to conspiracies that one stopped. So, you know, the question was without directing a verdict, so to speak. Yeah. There was there wasn't there. It wasn't just a question of, you know, what happens? What has the conspiracy stopped with this guy? The one person that you can easily answer. Yes. But they ask the compound question. Right. One stops. The other one stops up. Yes. Answer to that is it says quite a bit more than right. But here's what I think they should have. The judge should have done. He should have said, well, when a conspiracy is reduced to one member, I think he could have. He could have specifically told them saying, yes, that the conspiracy would end, of course, because that's the law. I don't think he should have said and another one begins because now we're talking about telling them that there, you know, there was an additional conspiracy. I don't think that's beneficial to either side particularly. But I think that they had to be instructed in some way to understand that they must have been. I think we can assume that they might very well have been thinking we've got the indictment. We know this started tonight. They're supposed to have started in 97 and starts in 2002. It is pled as if there is an overall conspiracy. There's nothing about Mrs. Park becoming an informant in the middle of the indictment. And so they have to understand they may have already understood that you can't enter into a conspiracy with a informant. But of course, at the beginning, Mrs. Park was not an informant. And so they were they were already told that you can't have a conspiracy with an informant. Now, I argued exactly, you know, what I wanted them to find. And I argued, you know, that the conspiracy had been reduced to one number and therefore it ended. And if there was another one, it began up again. But the judge doesn't tell them to ignore what I say. But the judge, on the other hand, says, well, you know that what the counsel says is just arguments. And really a direct and maybe more factual situation. But they had heard what I had to say. They were agreeing with me. And what they were doing, I think, is checking with the judge to see was Mr. Trapp giving it to a straight as he told us the truth about this. And they had it. They wanted to know that. And the judge didn't say anything that would indicate that what I had said was correct. He simply sent them back to the drawing board. Well, they not only had heard those instructions, but they had them in writing. So they had gone over them. We have to assume that they had gone over them to some extent before they asked the question and they couldn't figure it out. But you understand the reluctance of a judge that has a jury in the courtroom to avoid seeming to endorse the position of one lawyer or another. And I realize that it may have been perfectly OK for the judge to do that if he had chosen to do it. But I have some difficulty finding an abuse of discretion, which is the test, which is the test. When the judge chooses not to do that for reasons I understand perfectly well. I'm sure my colleagues in your heart, you probably do as well. The judge does not want to be up here, because, of course, you never know what happens when you come down on one side or the other. Sometimes the jury reacts other ways. So all sorts of things can happen with a jury, sort of sensitive animal there. So he says, look, we've got instructions that if you pause carefully, we'll give you the answer. And the judge might have thought, and I think might reasonably have thought, the reason they don't know the answer to this question is they haven't focused. There are a lot of instructions there they don't know which ones to focus on. So I'll tell them, read particularly carefully these three instructions. If you read the three instructions together with this question in mind, if you just take these three instructions from the group you're given, you will deduce the answer. I have a hard time coming up with abusive discretion. You know, I might have done this one. I might not have done differently. You know, the unfairness arises against the background of the jury seeming to come becoming around my my argument. The jury must have focused on those instructions because I use the instructions and you can see in the transcript. I use the instructions. That's why we like, of course, to have an agreement on instructions before we argue. I use the instructions to argue the jury because if I say the judge is going to tell you something and the judge tells them something, it gives me a certain. So we have been over that in a sense. Then the judge did sort of endorse your argument. You know, if you hop on these instructions and he comes back and he says, look at these instructions. He's sort of endorsing argument without well, without doing so. So I suggest it's an abuse of discretion because I mean, is it should be held against the defendant that he's making some progress in the case? Should it be held against the defendant that the jury is coming around to his way of thinking? I think that the jury made it clear that they were confused. And the only way you could straighten them out is to say that not only is it the case that when a person is supposedly involved with a conspiracy, but they're an informant, they're not a conspirator. But but that when if they become an informant and it's reduced to one number, that there is no conspiracy to do to solve the problem for them because it's supposed to be doing fact. It's a tough road to go. But I think you've done as well with it as could be done. Do you want to save? I'll save the balance. I'll pass on arguing as to as to the sentencing aspects. OK. OK. Thank you. Thank you. Well, next year from the government. Good morning, Your Honor. Karen Johnson for the United. How are you? You think you can pull that mic down just a little bit? You know, I'm sure people have to do that our entire lives. Actually, we're all short. I was debating if I should get up on it. If this is all right, can you step up in there? But I made it please the court. I don't agree with counsel's initial analysis, perhaps due to a cynicism of the corruption of the Guam Customs Authority. There was one conspiracy here, and I believe that Mr. Netanyahu was part of the network that you had starting in 1997. So is it your position? Did the jury find him guilty of a single or of a single or continuing conspiracy? I think we found him guilty of a single conspiracy that spanned that period of time for two reasons. We know that he was corrupt, as was Mr. Tahaji, when they shook down Mrs. Park in 1998. You may recall in the brief, she brought in a container load of restaurant equipment, which got inspected one day by regular customs authorities. And here comes the defendant and his supervisor, Tahaji, the next day to do another inspection. She says, but I've already been inspected. Oh, we're going to do it again, they say. But also in 1998, you did tell Park he can't help anymore. What conspiracy then existed after that? Well, I think that Nanetti and Yudig and Tahaji were another network of individuals. So one customs officer can't do this alone. At the air cargo terminal, you have to have your supervisor at least on board. It helps if you have other members of the shift on board. The fact that when Mrs. Park went to him in 2002 and said, I want to bring in more goods, can you help me? He didn't miss a beat. He didn't say, let me look around and see who I can find to help us. He pulled out a piece of paper and wrote the defendant's name and phone number on it. I can see, at least as I read the record, they're all part of a group. They all know what they're doing, but what did he do between 1998 and 2002? He did the same as Mr. Yudig, and that is nothing. In 1997, I believe that they were all involved. After a February or March of 1998, they got scared and they stopped for a while. So you say they were still all involved together. I think they were still all involved together. They just retreated until they found a better... They got scared and they suspended their operation and did not cease them. You can say they suspended. These are sort of conclusions. What do they have? Sort of meetings where they meet together and say, well, let's stay put for a while longer. It sounds to me like they were doing this activity for whatever reason. They got scared or no opportunities or who knows. They ceased doing them for a long time. We're not talking about two months or six months. We're talking about four years, right? Yes, almost four years. There's no evidence the government has put in the record that there was any communication during this time, any minutes of meetings or the conspiracy or anything. That's true. That was discussed or there was any attempts or anything else. It's a complete absence of activity. Now, I was speculating that they sort of... I mean, I think what she says, you know, every so often they must have met and said, you know, should we start up again? And they said, no, no, not yet. It's too hard. I mean, that's what I was speculating, but there's no evidence of that. There's an absence of activity concerning Mrs. Park and what the others were doing. Was there any evidence in the record of any activity whatsoever with respect to anybody? No. Okay. So we don't know. I mean, we can speculate. We can guess that there was... that they gave each other first glances or maybe had discussions that said, you know, do you think the coast is clear yet? No, no, no. I mean, we don't know. For all we know, they called an end to it, and then an opportunity arises for whatever reason four years later. Well, you have another piece of evidence. Well, maybe it would be easiest. What evidence in the record supports a finding that there's a continuing conspiracy? Starting in 1997. Well, I mean, you know, obviously there's an attack on the sufficiency of the evidence. So what is the evidence in the record and the inferences that go with it? Concerning beginning in 1997, the fact that two things, that Mr. Udig knew that this man would help him, implying that he had been helping him, and second, that when Mrs. Park... I'm sorry. Mr. Nemeth. Yeah. This man means defendant. Yes. Okay. I'm sorry. I just want to make sure I have the cast. That Udig knew that the defendant would help him, as evidenced by the fact he pulls out her name and phone number. I mean, nothing about making a phone call first. The second piece of evidence is the meeting at the Daiichi restaurant when Mrs. Park says, you know, I was bringing in goods with Mr. Udig, paying him between $300 and $500 a shipment, and no one misses a beat. When she talked about bringing in more purses, no one ever says, what do you mean? They say, oh, yeah, don't bring it in on Sunday because I don't work Sundays. It showed a knowledge of the overall scheme and a willingness to participate, which I think the jury could have found that they had been previous participants in this overall network of customs officers. Certainly the defendant was aware that Mrs. Park had been doing this with Udig because she laid it out for them at lunch. $300 to $500 a shipment, I'm willing to do the same thing for you, and these guys said, sign us up. We'll do it for you. So if they were not involved in the initial conspiracy, they certainly joined it when they were fully advised of the scope of it and they said, sign us up. And third, of course, if the court finds that there was a break, then there certainly was a variance but not a prejudicial one. The jury convicted him of the substantive offenses of bribery and trafficking. Well, I don't understand how it can be non-prejudicial. If there were, in fact, two conspiracies rather than one, then you've got a variance. You haven't got the they've been convicted of a crime that wasn't charged. How could that possibly be non-prejudicial? Well, under United States v. Berger, it sets out the criteria. The fundamental issue is the defendant on notice as to what the charge is and he can defend against it. Obviously, he was here. Is there a question of double? He's on notice to defend against one conspiracy. The way you defend against one conspiracy is by showing that there was a gap. There were two conspiracies, in fact. There was a time in between there where there was no the only other participant was a government foreman and that broke the chain. That's how he presents his defense. If the government said, look, he was involved in two conspiracies separated by a gap, presumably he would have presented a different defense or pled guilty or whatever. But I don't As I understand deciding whether a variance is prejudicial under U.S. v. Berger, you look at fundamentally did the jury unanimously find a set of facts that supports the conviction. There was no dispute that in 2002 the defendant recruited his supervisor. Yudik went to the defendant. The defendant went to his supervisor and signed him up. Whether the defendant committed a set of facts upon which they could find that he conspired with Yudik and Tahaji to commit these offenses. And there's no in fact, they did not dispute that. In fact, that is exactly what he did. There was no dispute. Let me ask you this. If it turns out, if you sort of magically knew what happened in the jury room and it turns out that the jury said, yeah, you know, we're going to convict him because it was a conspiracy and then it stopped and then he started a second conspiracy and he was on board, the defendant was on board on both of these conspiracies and the way we understand the indictment and jury instructions, that's good enough to convict. And they all agree on that. It is good enough to convict. Well, how could that possibly be when the government charges one conspiracy in the indictment and the defendant tries hard to disprove that notion and the jury comes back and says, oh, well, two conspiracies and the judge is as good as one. Well, that is the rule. I mean, how can that be good enough? Because they would have, under the facts of this case, they would have unanimously found that he joined with these other two people in 2002 to conspire to commit the two crimes charged. By the facts of this case, they had to have done that because they convicted him of the substantive offenses. And that's the fundamental issue. So you would just look at the second conspiracy and so long as you follow that, that's good enough. That would unquestionably be good enough to support these conspiracies. In the gap and before that doesn't. I don't. Okay. That's our position. Okay. And concerning Pinkerton, I think the law is pretty clear on this, that if you have an aiding and abetting instruction also, that you may find that the defendant unanimously, you have evidence from which they could unanimously support a conviction on aiding and abetting. And we know that they thought that also because, again, they convicted him of the substantive offenses, which were aiding and abetting offenses. Let me ask you about the bribery offense. He went to lunch a couple of times and got a couple of handbags. Is that really enough to convict him of bribery? Oh, yes. It's anything of value, Your Honor, and these things are of value. The persons, as counterfeits, and that's not the real thing, but as counterfeits was selling her store between $100 and $400. That's what tourists are paying for these counterfeits. He didn't ask for those, did he? He accepted them. He accepted them, but he didn't ask for them. No, his confederate, Mr. Tahaji, asked for them. Yes. And Mr. Tahaji said, you know, let them give us lunch. He didn't come in and say, I will do this if you will give me lunch. No. They were doing things for her and they were getting things in return, and that is bribery. They were getting something of value, and there was plenty of evidence in the record to support that. Were you counsel at trial also? Yes, I was. Well, just a question in terms of did, since we have both counsel from trial here, was it argued that the arguments that Judge Nelson is making right now were those arguments that were argued to the jury and then the jury was given the law on what bribery is and then the jury resolved those factual issues or? My recollection is that the amount of the bribe I don't think was an issue. The fact that there was a bribe, counsel maybe could remember to close the argument better than I do. My recollection is that. Do you mean it wasn't memorable? No. It's always memorable, but not that memorable. I don't think that the fact that it was a small amount of money or a small amount of value was an issue because the statute provides anything of value. But we have yours. But I wonder, though, who has the burden of, I think if I understand the import of Ms. Callahan's question is whether or not this issue was preserved for appeal, the sufficient, you know, whether there was a, I mean, let's say it was a completely trivial amount. The government has the burden to present some material bribe, you know, something that's more than. Something of value. Something of value. It's something that's totally, you know, paper cup, it's an empty paper cup with water in it. It wouldn't be a bribe, even though it was established. And that would be the government's burden, and there would be no issue that that's preserved for appeal if there was a failure of proof. Well, that was not the basis of counsel's Rule 29 motion. And that is the first, in fact, that I have heard of. But let's say it's not raised by a Rule 29 motion at all. Then I do not think it's before this Court. Sufficiency is always an issue, isn't it? If the government must prove a bribe, and the evidence it submits shows that the evidence of bribe is entirely trivial, consists of nothing of value, that's an issue that's obviously. It's a case of notice. In other words, when we prepare our briefs, we prepare them on the objections that have been raised below and the issues that have been preserved for appeal. But this wasn't a brief here. Only because I set out the generally pertinent facts. But counsel in his brief did not question value. And if we wanted to, if the Court, for example, wanted if there was sufficiency of the evidence on value, I would have written my brief differently. And that would have been a topic I would have addressed in my brief. I did not because that issue, as far as I understand, is not before this Court. They have conceded that issue. The defendants went in for lunch. They liked the most expensive thing on the menu, the $30 a bowl seafood soup. And class. Oh, yes. Bless and may some bowl. Yes. And it's simply not an issue before this Court, as I understand it. Okay. Thank you. Thank you. Mr. Trapp, you've got just shy of four minutes. It is true that we have not raised. We didn't move under Rule 29 for a judgment of acquittal as to all four counts. I did not raise on this appeal, although I suppose the court could play their analysis if they wish to. But the point is, it was argued. I argued that the first place the bags were junk. And so how could anybody think that they were counterfeit? And so when they and so they weren't because there's a defense built into that. I won't go into it. And I argued that he hardly got anything that they had to sort of force it on him. And so that goes to the issue as to whether or not the court can say beyond a reasonable doubt that if I'm right about the conspiracy account, that the jury did not convict him of the substantive accounts as they cannot say beyond a reasonable doubt that they did not convict him because of Pinkerton, because there's no question that he was getting something. No question that he was getting something. And so if under Pinkerton, then he could be convicted because there's no question. But what to Haji really receive bribes on the beyond a reasonable doubt. The question also was keep in mind that on sentencing, Judge Pinker was no longer on the bench. Judge Pregerson, District Judge Pregerson, the court district court, Judge Pregerson gave him a minor role adjustment because he was so little involved in this. Thank you very much. Please have your sense of whether the bank. We will not next year argument in the United States. This is McNeil. And can I ask the court, please? Peter Esser representing Mr. McNeil. Pull the microphone. Thank you. Is this a 10 or 20 minute argument? There seems to have been some debate. I assume it's a 20.
judges: D.W. Nelson, Kozinski, Callahan